UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
Central Division

CIVIL ACTION NO.

| | |
|---|---|
| JAMES A. WALCKNER,<br>                    Plaintiff<br><br>V.<br><br>TOWN OF MENDON,<br><br>LAWNEY TINIO, in his Personal and Official Capacities,<br><br>ERNEST H. HORN, in his Personal and Official Capacities,<br><br>THOMAS GREENE, in his Personal and Official Capacities,<br><br>MICHAEL ZARELLA, in his Personal and Official Capacities,<br>                    Defendants | COMPLAINT AND<br>DEMAND FOR TRIAL BY JURY |

## PARTIES

1. The Plaintiff is James A. Walckner, an individual residing in the Town of Plainfield, County of Windham, State of Connecticut (hereinafter referred to as the "Plaintiff").

2. The Defendant is the Town of Mendon, a municipality located in the County of Worcester, Commonwealth of Massachusetts (hereinafter referred to as "Town of Mendon").

3. The Defendant is Lawney Tinio, personally and as the former Chairman of the Board of Selectmen in the Town of Mendon, who resides in the Town of Mendon, County of Worcester, Commonwealth of Massachusetts.

4. The Defendant Ernest H. Horn, personally and as the Chief of Police of the Mendon Police Department, is a resident of the Town of Mendon, County of Worcester, Commonwealth of Massachusetts.

5.  The Defendant Thomas Greene, personally and as a Special Officer of the Mendon Police Department, is a resident of the Town of Blackstone, County of Worcester, Commonwealth of Massachusetts.

6.  The Defendant Michael Zarella, personally and as an employee of the Town of Mendon, is a resident of the Town of Millville, County of Worcester, Commonwealth of Massachusetts.

## JURISDICTION AND VENUE

7.  This Court has jurisdiction of the within cause of action pursuant to diversity of citizenship and amount of controversy, 28 U.S.C. §1332.

8.  Venue lies in the District of Massachusetts pursuant to 28 U.S.C. §1391 in that the Defendant Town of Mendon is located within, and other Defendants reside within, this district.

## FACTS

9.  The Plaintiff became a member of the Massachusetts bar on June 14, 2012.

10. The Plaintiff began working as a police officer for the Defendant Town of Mendon on or about February 13, 2000.

11. During his career, the Plaintiff worked as a patrol officer, and after only a period of months was elevated to the position of Detective.

12. Later, the Plaintiff was assigned to a regional SWAT team operated by the Central Massachusetts Law Enforcement Council, a highly-coveted position.

13. During his period of employment the Plaintiff was recognized with several commendations for exemplary work.

14. Defendant Ernest H. Horn was at all relevant times employed as the chief of police for the Defendant Town of Mendon.

15. Defendant Ernest H. Horn owned a consulting firm that focused on the management and operation of municipal police and fire departments.

16. During the summer 2008, the Plaintiff was accepted to law school and scheduled to begin classes in the fall semester of 2008.

17. Despite Defendant Ernest H. Horn not having completed his bachelor's degree at the time, the Plaintiff encouraged Defendant Ernest H. Horn apply to the Massachusetts School of Law.

18. The Plaintiff and Defendant Ernest H. Horn began classes at the Massachusetts School of Law in August 2008.

19. Defendant Ernest H. Horn developed a romantic interest in a woman the Plaintiff dated briefly at the law school.

20. In November 2008, Defendant Ernest H. Horn used his official position to remove the Plaintiff from his SWAT Team assignment for personal reasons and without legitimate cause.

21. On or about December 2, 2008, Defendant Ernest H. Horn held a meeting with the Plaintiff and with several other employees of the Defendant Town of Mendon present.

22. Patricia Benoit-Rudden, an employee of the Town of Mendon, was present during the meeting and created a typewritten transcript of the statements made during the meeting.

23. During the December 2, 2008 meeting, the Plaintiff alleged Defendant Ernest H. Horn abused his authority as police chief to remove him from his SWAT Team assignment for personal motives.

24. During the same December 2, 2008 meeting, the Plaintiff admitted to having fallen asleep while on duty and agreed to accept employment discipline in the form of an unpaid suspension.

25. The Plaintiff and Defendant Ernest H. Horn signed the typewritten transcript created by Patricia Benoit-Rudden (hereinafter referred to as the "B-R Transcript").

26. Defendant Ernest H. Horn issued the Plaintiff a letter (hereinafter referred to as the "First Letter") concerning the suspension that cited a plethora of infractions beyond the scope of the Plaintiff's admission of sleeping at work.

27. The Plaintiff sought removal of the letter pursuant to the grievance procedure as laid out by the collective bargaining agreement in effect at the time.

28. By agreement between the Plaintiff, represented by his union attorney, and the Defendant Ernest H. Horn, through attorney Jack Collins, the First Letter was to be removed from the Plaintiff's personnel file and replaced by a different, agreed upon, letter.

29. Starting in or about 2008, Mendon Police Lieutenant Donald Blanchette instituted a practice of corporal punishment and intimidation among subordinate employees that spanned over a period of years.

30. Donald Blanchette's corporal punishment included numerous threats and physical acts of violence upon several employees.

31. Defendant Ernest H. Horn made numerous decisions involving the use of municipal funds that brought questions of inappropriate spending and misuse of government funds.

32. Defendant Ernest H. Horn's chronic absenteeism from the workplace brought questions of the legitimacy of his compensation and abuses of discretion.

33. Defendant Ernest H. Horn and Donald Blanchette maintained a close personal friendship outside the workplace.

34. On June 16, 2013, the Plaintiff and another Mendon Police Officer presented themselves to the Detective Unit of the Massachusetts State Police to report suspected criminal misconduct of Defendant Ernest H. Horn and Mendon Police Lieutenant Donald Blanchette.

35. Several employees, including the Plaintiff, were interviewed by Massachusetts State Police detectives.

36. The statements of several people interviewed by the Massachusetts State Police, that included current and former employees of the Defendant Town of Mendon, corroborated the Plaintiff's statements.

37. On or about September 30, 2013, Defendant Ernest H. Horn became aware of the Massachusetts State Police investigation of Donald Blanchette.

38. On or about September 30, 2013, Defendant Ernest H. Horn placed Donald Blanchette on administrative leave.

39. At some time thereafter, Defendant Ernest H. Horn permitted Donald Blanchette to utilize earned paid sick leave for an extended absence from work.

40. On or about October 3, 2013, the Plaintiff spoke with Mendon Police Sergeant David Kurczy and made a joke about having to investigate a matter at Kurczy's home.

41. That same day, on or about October 3, 2013, Defendant Ernest H. Horn spoke with the Plaintiff and David Kurczy, at which time Defendant Ernest H. Horn cautioned against comments such as the one made by the Plaintiff.

42. On or about October 3, 2013, Defendant Ernest H. Horn told the Plaintiff and David Kurczy he considered the matter closed.

43. On or about October 14, 2013, David Kurczy spoke with the Plaintiff to dispense with any tension between them and apologize for making past remarks concerning the Plaintiff's dating history.

44. Following its investigation, Massachusetts State Police detectives arrested Donald Blanchette on October 21, 2013.

45. Defendant Thomas Greene and Defendant Michael Zarella maintained close personal friendships with Defendant Ernest H. Horn outside the workplace.

46. Defendant Thomas Green and Defendant Michael Zarella performed work for Defendant Ernest H. Horn's consulting business.

47. On or about November 22, 2013, Defendant Ernest H. Horn assigned Defendant Thomas Greene to conduct an investigation of the allegations made against Donald Blanchette and to determine whether other employees engaged in unlawful activities or conduct that would be in violation of the police department policies, procedures, and Code of Conduct.

48. Defendant Ernest H. Horn selected Attorney Jack Collins to monitor Defendant Thomas Greene's investigation and to provide legal guidance.

49. Upon information and belief, Attorney Jack Collins was counsel to the Massachusetts Chiefs of Police Association in November 2013, and in that capacity owed some fiduciary duties to Defendant Ernest H. Horn.

50. Upon information and belief, Attorney Jack Collins owed Defendant Ernest H. Horn some fiduciary duties as a result of prior representation.

51. The investigation by Defendant Thomas Greene targeted the Plaintiff and other current and former employees of the Defendant Town of Mendon who cooperated with the state police investigation of Donald Blanchette or shared information concerning Defendant Ernest H. Horn's questionable conduct.

52. On or about January 28, 2014, the Plaintiff, under threat of adverse employment action, responded to written questions posed by Defendant Thomas Greene that concerned allegations the Plaintiff made to the Massachusetts State Police concerning employees of the Mendon Police Department, that included Defendant Ernest H. Horn.

53. On or about January 28, 2014, the Plaintiff, under threat of adverse employment action, responded to questions by Defendant Thomas Greene that concerned the details of information the Plaintiff shared with other state agencies concerning employees of the Mendon Police Department, that included Defendant Ernest H. Horn.

54. In responding to the questions posed by Defendant Thomas Greene, the Plaintiff disclosed he reported suspected criminal misconduct to the Massachusetts State Police and suspected waste of municipal funds to the Massachusetts Office of Inspector General.

55. In or about early April 2014, Defendant Ernest H. Horn discovered the Plaintiff was one of the officers that initially reported his questionable conduct to the Massachusetts State Police.

56. On or about April 16, 2014, Defendant Ernest H. Horn issued the Plaintiff a three paged, single spaced, written letter of counseling concerning the statement the Plaintiff made to David Kurczy on or about October 3, 2013.

57. On or about April 18, 2014, Defendant Thomas Greene summoned the Plaintiff to the office utilized exclusively by Defendant Ernest H. Horn.

58. All meetings between Defendant Thomas Greene and the Plaintiff prior to April 18, 2014, occurred in a construction trailer used by the Mendon Police Department, in part, as a squad room.

59. During the April 18, 2014 meeting, Defendant Thomas Greene informed the Plaintiff the information shared with the Massachusetts State Police was erroneous.

60. During the April 18, 2014 meeting, Defendant Thomas Greene told the Plaintiff he should be concerned over the impact the "investigation" could have on the Plaintiff's license to practice law.

61. The Plaintiff understood Defendant Thomas Greene's comment to be a threat to bring a complaint to the Massachusetts Board of Bar Overseers, or take some other action, to affect the Plaintiff's license to practice law.

62. During the April 18, 2014 meeting, Defendant Thomas Greene told the Plaintiff to contact Massachusetts State Police Lieutenant Michael Lyver and recant his prior statements as they related to Defendant Ernest H. Horn.

63. During the April 18, 2014 meeting, Defendant Thomas Greene told the Plaintiff he intended to share the results of his "investigation" with the Worcester County District

Attorney's Office and request the Plaintiff be prosecuted for filing a false report with the Massachusetts State Police.

64. After the April 18, 2014 meeting, on or about April 18, 2014, the Plaintiff was treated at the Marlborough Hospital Emergency Department for chest pain.

65. On or about April 18, 2014, the Plaintiff telephoned Massachusetts State Police Lieutenant Michael Lyver and reported the retaliatory conduct of Defendant Ernest H. Horn and Defendant Thomas Greene, and his intention to resign from the police department to avoid further harassment and retaliation.

66. On or about April 22, 2014, the Plaintiff informed Defendant Ernest H. Horn it was his intention to resign from the Mendon Police Department.

67. During the April 22, 2014 meeting, Defendant Ernest H. Horn told the Plaintiff he risked criminal prosecution and discipline by the Board of Bar Overseers by reporting Defendant Ernest H. Horn's suspected criminal conduct to the Massachusetts State Police and Massachusetts Office of Inspector General.

68. During the April 22, 2014 meeting, Defendant Ernest H. Horn told the Plaintiff of his intention to seek termination of the Plaintiff's employment by the Defendant Town of Mendon.

69. During the April 22, 2014 meeting, Defendant Ernest H. Horn told the Plaintiff to have his union lawyer contact "his lawyer," referring to Attorney Jack Collins, to begin discussing severance.

70. On or about April 22, 2014, the Plaintiff, through his union attorney, began negotiating a severance agreement that included several edits by the Plaintiff, Attorney Jack Collins, and Defendant Ernest H. Horn.

71. On or about April 23, 2014, Defendant Ernest H. Horn placed the Plaintiff on paid administrative leave.

72. On or about May 12, 2014, Defendant Lawney Tinio, acting on behalf of Defendant Town of Mendon, the Plaintiff, and a representative of the labor union, executed a severance agreement (hereinafter "Severance Agreement").

73. The Severance Agreement addressed compensation, continuation of benefits, statements by either party, and waiver of claims.

74. Paragraph 1 of the Severance Agreement, titled "Resignation," indicated the Plaintiff was to resign from his employ by Defendant Town of Mendon effective June 30, 2014.

75. Paragraph 9 of the Severance Agreement, titled "Waiver of Claims by Town" read in pertinent part: "...the Town agrees on behalf of its...employees...to release the Employee [the Plaintiff] from any and all claims of any kind arising from any facts that it knew or had reason to know about regarding Employee's employment and will not pursue any civil or administrative claims against Employee, excluding claims to enforce this Agreement."

76. Paragraph 13 of the Severance Agreement, titled "No Communication Detrimental to the Town or Employee," read in pertinent part: "The Town and Employee agree that they will not make any public oral or written communication of a material statement to any person or entity which has the effect of damaging either's reputation, is untruthful, or otherwise working in any way to either's detriment...Violation of this restriction by either party shall relieve the other party of its obligations or surrender of rights hereunder or as provided elsewhere in this agreement."

77. Paragraph 21 of the Severance Agreement, titled "Miscellaneous," read in pertinent part: "This Agreement shall be binding on the Parties and their respective representatives, successors, agents, servants, employees, officials, officers, and assigns."

<u>COUNT ONE</u>
<u>Breach of Contract</u>
<u>Town of Mendon; Ernest H. Horn</u>

78. The Plaintiff repeats and reavers the allegations contained in Paragraphs One through Seventy-seven, inclusive, of his Complaint with the same force and effect as if expressly rewritten here.

79. The Defendant Ernest H. Horn made oral communication of a material statement to members of the press, including the Worcester Telegram and Gazette, with the effect of damaging the Plaintiff's reputation.

80. The press, including the Worcester Telegram and Gazette, publicized negative content with the effect of damaging the Plaintiff's reputation.

81. The actions of Defendant Ernest H. Horn were in violation of Paragraph 13 of the Severance Agreement.

82. The actions of Defendant Ernest H. Horn constituted a material breach of the Severance Agreement.

83. As a result of Defendant Ernest H. Horn's actions the Plaintiff suffered damages and continues to suffer damages.

COUNT TWO
Breach of Contract
Town of Mendon; Ernest H. Horn

84. The Plaintiff repeats and reavers the allegations contained in Paragraphs One through Eighty-three, inclusive, of his Complaint with the same force and effect as if expressly rewritten here.

85. The Defendant Ernest H. Horn provided oral communication to members of the press that were material and untruthful.

86. The press, including the Worcester Telegram and Gazette, publicized negative content with the effect of damaging the Plaintiff's reputation.

87. The actions of Defendant Ernest H. Horn were in violation of Paragraph 13 of the Severance Agreement.

88. The actions of Defendant Ernest H. Horn constituted a material breach of the Severance Agreement.

89. As a result of Defendant Ernest H. Horn's actions the Plaintiff suffered damages and continues to suffer damages.

COUNT THREE
Breach of Contract
Town of Mendon; Ernest H. Horn

90. The Plaintiff repeats and reavers the allegations contained in Paragraphs One through Eighty-nine, inclusive, of his Complaint with the same force and effect as if expressly rewritten here.

91. The Defendant Ernest H. Horn provided oral communication to members of the press that that worked to the detriment of the Plaintiff.

92. The press, including the Worcester Telegram and Gazette, publicized negative content with the effect of damaging the Plaintiff's reputation.

93. The actions of Defendant Ernest H. Horn were in violation of Paragraph 13 of the Severance Agreement.

94. The actions of Defendant Ernest H. Horn constituted a material breach of the Severance Agreement.

95. As a result of Defendant Ernest H. Horn's actions the Plaintiff suffered damages and continues to suffer damages.

COUNT FOUR
Breach of Contract
Town of Mendon; Ernest H. Horn; Michael Zarella

96. The Plaintiff repeats and reavers the allegations contained in Paragraphs One through Ninety-five, inclusive, of his Complaint with the same force and effect as if expressly rewritten here.

97. The Defendant Ernest H. Horn provided written communication to Defendant Michael Zarella of a material statement with the effect of damaging the Plaintiff's reputation, that included the First Letter and excluded the B-R Transcript.

98. On or about August 28, 2015, the Defendant Michael Zarella provided the written communication of a material statement with the effect of damaging the Plaintiff's reputation as the basis of a complaint to the Massachusetts Board of Bar Overseers against the Plaintiff, including the First Letter and excluding the B-R Transcript.

99. The actions of Defendant Ernest H. Horn and Defendant Michael Zarella were in violation of Paragraph 9 and Paragraph 13 of the Severance Agreement.

100.    The actions of Defendant Ernest H. Horn and Defendant Michael Zarella constituted a material breach of the Severance Agreement.

101.    As a result of actions by Defendant Ernest H. Horn and Defendant Michael Zarella the Plaintiff suffered damages and continues to suffer damages.

COUNT FIVE
Breach of Contract
Town of Mendon; Ernest H. Horn; Michael Zarella

102.    The Plaintiff repeats and reavers the allegations contained in Paragraphs One through One hundred one, inclusive, of his Complaint with the same force and effect as if expressly rewritten here.

103.    The Defendant Ernest H. Horn provided written communication to Defendant Michael Zarella that were material and untruthful, that included the First Letter and excluded the B-R Transcript.

104.    On or about August 28, 2015, the Defendant Michael Zarella provided written communication that was material and untruthful as the basis of a complaint to the Massachusetts Board of Bar Overseers against the Plaintiff, including the First Letter and excluding the B-R Transcript.

105.    The actions of Defendant Ernest H. Horn and Defendant Michael Zarella were in violation of Paragraph 9 and Paragraph 13 of the Severance Agreement.

106.    The actions of Defendant Ernest H. Horn and Defendant Michael Zarella constituted a material breach of the Severance Agreement.

107.    As a result of actions by Defendant Ernest H. Horn and Defendant Michael Zarella the Plaintiff suffered damages and continues to suffer damages.

COUNT SIX
Breach of Contract
Town of Mendon; Ernest H. Horn; Michael Zarella

108.    The Plaintiff repeats and reavers the allegations contained in Paragraphs One through One hundred seven, inclusive, of his Complaint with the same force and effect as if expressly rewritten here.

109.    The Defendant Ernest H. Horn provided written communication to Defendant Michael Zarella that worked to the detriment of the Plaintiff, that included the First Letter and excluded the B-R Transcript.

110.    On or about August 28, 2015, the Defendant Michael Zarella provided written communication that worked to the detriment of the Plaintiff as the basis of a complaint to the Massachusetts Board of Bar Overseers against the Plaintiff, including the First Letter and excluding the B-R Transcript.

111.    The actions of Defendant Ernest H. Horn and Defendant Michael Zarella were in violation of Paragraph 9 and Paragraph 13 of the Severance Agreement.

112.    The actions of Defendant Ernest H. Horn and Defendant Michael Zarella constituted a material breach of the Severance Agreement.

113.     As a result of actions by Defendant Ernest H. Horn and Defendant Michael Zarella the Plaintiff suffered damages and continues to suffer damages.

### COUNT SEVEN
### Good Faith and Fair Dealing
### Town of Mendon; Ernest H. Horn; Michael Zarella

114.      The Plaintiff repeats and reavers the allegations contained in Paragraphs One through One Hundred thirteen, inclusive, of his Complaint with the same force and effect as if expressly rewritten here.

115.     There exists in Massachusetts an implied covenant of good faith and fair dealing in all contracts.

116.     The Severance Agreement was a contract.

117.     Through the above-described actions, the Defendants breached that covenant with respect to the Plaintiff through conduct that was intentional, malicious, and without proper or legitimate purpose according to law.

118.     Through the above-described actions, the Defendants injured the Plaintiff's personal and professional reputation.

119.     As a direct and proximate result of the Defendants' actions, the Plaintiff suffered damages.

### COUNT EIGHT
### Breach of Contract
### Town of Mendon; Ernest H. Horn

120.     The Plaintiff repeats and reavers the allegations contained in Paragraphs One through One hundred nineteen, inclusive, of his Complaint with the same force and effect as if expressly rewritten here.

121.     The Plaintiff was a member of the Massachusetts Coalition of Police Local 188, AFL-CIO (hereinafter referred to as "Police Union").

122.     The Police Union and Defendant Town of Mendon executed a collective bargaining agreement (hereinafter referred to as "CBA") that defined terms of employment.

123.     The Plaintiff was an intended beneficiary of the CBA.

124.     Article 33 of the CBA read in pertinent part: "The Town agrees that in order to protect the rights of individuals to their privacy, all records, including but not limited to evaluations (medical, physiological, psychological, job performance, etc.), employment applications, work records, performance records, discipline records etc., are to remain strictly confidential and (unless lawfully required otherwise e.g. subpoena) shall not be released in any manner including, but not limited to, oral and/or visual and/or written dissemination to any party outside of the Police Department for any reason without the written approval and waiver of liability by the affected and/or involved Employee."

125.     The Defendant Ernest H. Horn provided Defendant Michael Zarella with records as described in Article 33 of the CBA.

126.     The actions of Defendant Ernest H. Horn were in violation of Article 33 of the CBA.

127.     The actions of Defendant Ernest H. Horn constituted a material breach of the CBA.

128.     As a result of actions by Defendant Ernest H. Horn the Plaintiff suffered damages and continues to suffer damages.

COUNT NINE
Good Faith and Fair Dealing
Town of Mendon; Ernest H. Horn; Lawney Tinio

129.     The Plaintiff repeats and reavers the allegations contained in Paragraphs One through One Hundred Twenty-eight, inclusive, of his Complaint with the same force and effect as if expressly rewritten here.

130.     There exists in Massachusetts an implied covenant of good faith and fair dealing in all contracts.

131.     The CBA was a contract.

132.     Through the above-described actions, the Defendants breached that covenant with respect to the Plaintiff through conduct that was intentional, malicious, and without proper or legitimate purpose according to law.

133.     Through the above-described actions, the Defendants injured the Plaintiff's personal and professional reputation.

134.     As a direct and proximate result of the Defendants' actions, the Plaintiff suffered damages.

## COUNT TEN
### G.L. Chapter 149, §185: Retaliation Against Employees Reporting Violations of Law
### Town of Mendon; Ernest H. Horn; Thomas Greene; Michael Zarella

135.     The Plaintiff repeats and reavers the allegations contained in Paragraphs One through One Hundred Thirty-four, inclusive, of his Complaint with the same force and effect as if expressly rewritten here.

136.     The Plaintiff disclosed activities he reasonably believed to be violations of a law, rule, or regulation to the Massachusetts State Police.

137.     Conduct of the Defendants violated Massachusetts General Law Chapter 149, §185(b)(1).

138.     As a direct and proximate result of the Defendants' actions, the Plaintiff suffered damages.

## COUNT ELEVEN
### G.L. Chapter 149, §185: Retaliation Against Employees Reporting Violations of Law
### Town of Mendon; Ernest H. Horn; Thomas Greene; Michael Zarella

139.     The Plaintiff repeats and reavers the allegations contained in Paragraphs One through One Hundred Thirty-eight, inclusive, of his Complaint with the same force and effect as if expressly rewritten here.

140.     The Plaintiff provided information to the Massachusetts State Police investigation into violations of law.

141.     Conduct of the Defendants violated Massachusetts General Law Chapter 149, §185(b)(2).

142.     As a direct and proximate result of the Defendants' actions, the Plaintiff suffered damages.

## COUNT TWELVE
### G.L. Chapter 12A, §14: Retaliation for Complaint to Office of Inspector General
### Town of Mendon; Ernest H. Horn; Thomas Greene

143.     The Plaintiff repeats and reavers the allegations contained in Paragraphs One through One Hundred Forty-two, inclusive, of his Complaint with the same force and effect as if expressly rewritten here.

144.    The Plaintiff provided information to the Massachusetts Office of Inspector General concerning the possible existence of activity constituting fraud, waste or abuse.

145.    The Defendants took, or threatened to take, action against the Plaintiff as a reprisal for making a complaint or disclosing information to the inspector general.

146.    Conduct of the Defendants violated Massachusetts General Law Chapter 12A, §14(c).

147.    As a direct and proximate result of the Defendants' actions, the Plaintiff suffered damages.

COUNT THIRTEEN
Intentional Infliction of Emotional Distress
Town of Mendon; Ernest H. Horn; Thomas Greene; Michael Zarella

148.    The Plaintiff repeats and reavers the allegations contained in Paragraphs One through One Hundred Forty-seven, inclusive, of his Complaint with the same force and effect as if expressly rewritten here.

149.    Through the above-described actions of the Defendants and their agents, the Defendants intended to inflict emotional distress upon the Plaintiff, or knew or should have known that emotional distress would be the likely result of said conduct.

150.    The conduct of the Defendants was extreme and outrageous, beyond the bounds of decency, and intolerable in a civilized community.

151.    The conduct of the Defendants caused the Plaintiff to suffer emotional distress, embarrassment, and humiliation, the nature of which no reasonable person could be expected to endure.

152.    As a direct and proximate result of the Defendants' actions, the Plaintiff suffered damages.

COUNT FOURTEEN
Civil Conspiracy
Town of Mendon; Ernest H. Horn; Thomas Greene

153.    The Plaintiff repeats and reavers the allegations contained in Paragraphs One through One Hundred Fifty-two, inclusive, of his Complaint with the same force and effect as if expressly rewritten here.

154.    Through the above-described actions of the Defendants and their agents, a common design or agreement was entered to do wrongful acts. Those wrongful acts were the improper investigation, improper discipline, and wrongful termination of the Plaintiff.

155.    Through the above-described actions of the Defendants, that process was carried out and the Plaintiff was induced to resign to avoid threatened termination and threatened criminal prosecution.

156.    As a direct and proximate result of the Defendants' actions, the Plaintiff suffered damages.

## COUNT FIFTEEN
### Civil Conspiracy
### Town of Mendon; Ernest H. Horn; Michael Zarella

157.    The Plaintiff repeats and reavers the allegations contained in Paragraphs One through One Hundred Fifty-six, inclusive, of his Complaint with the same force and effect as if expressly rewritten here.

158.    Through the above-described actions of the Defendants and their agents, a common design or agreement was entered to do a wrongful act. That wrongful act was the improper production of inaccurate documents and the inaccurate complaint made to the Massachusetts Board of Bar Overseers regarding the Plaintiff.

159.    Through the above-described actions of the Defendants, that process was carried out and a petition was filed by the Office of Bar Counsel against the Plaintiff.

160.    As a direct and proximate result of the Defendants' actions, the Plaintiff suffered damages and continues to suffer damages.

## COUNT SIXTEEN
### Constructive Wrongful Discharge in Violation of Public Policy
### Town of Mendon; Ernest H. Horn; Thomas Greene

161.    The Plaintiff repeats and reavers the allegations contained in Paragraphs One through One Hundred Sixty, inclusive, of his Complaint with the same force and effect as if expressly rewritten here.

162.    The Plaintiff cooperated with an investigation conducted by the Massachusetts State Police.

163.     The Plaintiff was subsequently disciplined and threatened with termination of employment for providing information to the Massachusetts State Police.

164.     The Plaintiff was induced to resign in lieu of threatened termination, threatened criminal prosecution, and threatened complaints to the Board of Bar Overseers.

165.     As a direct and proximate result of the Defendants' actions, the Plaintiff suffered damages.

## COUNT SEVENTEEN
### Massachusetts Civil Rights Act
### Town of Mendon; Ernest H. Horn; Thomas Greene; Lawney Tinio

166.     The Plaintiff repeats and reavers the allegations contained in Paragraphs One through One Hundred Sixty-five, inclusive, of his Complaint with the same force and effect as if expressly rewritten here.

167.     At all relevant times, the Plaintiff possessed a constitutionally and contractually protected property interest in his employment with the Mendon Police Department and a constitutionally recognized right to remain free from intentional discriminatory actions.

168.     The above-described actions of the Defendants represent an attempt to impact those rights and interests adversely, and in fact did impact those rights and interests adversely and significantly, thereby violation the Massachusetts Civil Rights Act.

169.     The above-described actions of the Defendants were retaliatory, threatening, intimidating, and coercive, specifically including economically coercive conduct, particularly given the positions of authority held by the Defendants.

170.     As a direct and proximate result of the Defendants' actions, the Plaintiff suffered damages.

## COUNT EIGHTEEN
### Massachusetts Civil Rights Act
### Town of Mendon; Ernest H. Horn; Michael Zarella

171.     The Plaintiff repeats and reavers the allegations contained in Paragraphs One through One Hundred Seventy, inclusive, of his Complaint with the same force and effect as if expressly rewritten here.

172.     At all relevant times, the Plaintiff possessed a constitutionally and contractually protected property interest in the terms of the Severance Agreement and a constitutionally recognized right to remain free from intentional discriminatory actions.

173.     The above-described actions of the Defendants represent an attempt to impact those rights and interests adversely, and in fact did impact those rights and interests adversely and significantly, thereby violation the Massachusetts Civil Rights Act.

174.     The above-described actions of the Defendants were retaliatory and coercive, specifically including economically coercive conduct, particularly given the nature of the records provided to the Board of Bar Overseers by the Defendants.

175.     As a direct and proximate result of the Defendants' actions, the Plaintiff suffered damages.

COUNT NINETEEN
Defamation
Town of Mendon; Ernest H. Horn; Thomas Greene; Michael Zarella

176.     The Plaintiff repeats and reavers the allegations contained in Paragraphs One through One Hundred Seventy-five, inclusive, of his Complaint with the same force and effect as if expressly rewritten here.

177.     As referenced above, the Defendants made public and other published or reproduced statements concerning the Plaintiff that were false, defamatory, and defamatory per se.

178.     The statements made by the Defendants were asserted to be factual in nature and were not protected opinion.

179.     The statements held the Plaintiff up to public scorn, contempt, and ridicule, and have operated so as to impact adversely his good name and reputation, his professional stature, his emotional well-being, his economic prospects, and his employment situation.

180.     The statements of the Defendants were defamatory per se given they impute dishonesty, immorality, vice, and dishonorable conduct to the Plaintiff as well as injuring the Plaintiff in his occupation.

181.     The statements of the Defendants were false and utter or otherwise produced knowing that they would be republished in various forms and used in various ways to the detriment of the Plaintiff.

182.    The statements of the Defendants were made knowingly, intentionally, with subjective awareness and/or with reckless and utter disregard for their falsity.

183.    As a direct and proximate result of the Defendants' actions, the Plaintiff suffered damages.

**COUNT TWENTY**
**Negligent Hiring, Supervision, and Retention of Employees**
**Town of Mendon; Ernest H. Horn; Lawney Tinio**

184.    The Plaintiff repeats and reavers the allegations contained in Paragraphs One through One Hundred Eighty-three, inclusive, of his Complaint with the same force and effect as if expressly rewritten here.

185.    Through the above-described actions of the Defendants, the Defendants negligently hired, supervised, and retained Defendant Thomas Greene to the detriment of the Plaintiff.

186.    Through the above-described actions of the Defendants, the Defendants negligently hired, supervised, and retained Defendant Michael Zarella to the detriment of the Plaintiff.

187.    As a direct and proximate result of the Defendants' actions, the Plaintiff suffered damages.

**COUNT TWENTY-ONE**
**Negligent Hiring, Supervision, and Retention of Employees**
**Town of Mendon; Lawney Tinio**

188.    The Plaintiff repeats and reavers the allegations contained in Paragraphs One through One Hundred Eighty-seven, inclusive, of his Complaint with the same force and effect as if expressly rewritten here.

189.    Through the above-described actions of the Defendants, the Defendants negligently hired, supervised, and retained Defendant Ernest H. Horn to the detriment of the Plaintiff.

190.    As a direct and proximate result of the Defendants' actions, the Plaintiff suffered damages.

## COUNT TWENTY-TWO
### Interference with Advantageous Relations
### Town of Mendon; Ernest H. Horn; Thomas Greene; Lawney Tinio

191.     The Plaintiff repeats and reavers the allegations contained in Paragraphs One through One Hundred Ninety, inclusive, of his Complaint with the same force and effect as if expressly rewritten here.

192.     The Plaintiff was a full-time police officer and considered an employee under the CBA.

193.     Prior to the above-described actions of the Defendants, the Plaintiff enjoyed an advantageous relationship with the Town of Mendon through his employment as a police officer and possessed not only the right and capacity to continue that employment unfettered from frivolous and meritless charges, but to seek and secure promotional opportunities, as well as other career advancement opportunities.

194.     As a result of the above-described actions of the Defendants, the Plaintiff's ability to maintain employment, and to seek and secure those opportunities within the Mendon Police Department were permanently damaged.

195.     The Defendants' actions were intentional and involved improper motive and interfered with the Plaintiff's advantageous contractual relations.

196.     As a direct and proximate result of the Defendants' actions, the Plaintiff suffered damages.

## COUNT TWENTY-THREE
### Negligent Infliction of Emotional Distress
### Town of Mendon; Lawney Tinio

197.      The Plaintiff repeats and reavers the allegations contained in Paragraphs One through One Hundred Ninety-six, inclusive, of his Complaint with the same force and effect as if expressly rewritten here.

198.     The Defendant Town of Mendon and Defendant Lawney Tinio had a duty to supervise the other named Defendants.

199.     The Defendants breached that duty by failing to adequately supervise the other named defendants.

200.    The Defendants breached that duty by remaining deliberately indifferent to the conduct of other named Defendants.

201.    The conduct and actions of the other named Defendants was reasonably foreseeable.

202.    Through the above-described actions of the other named Defendants and the Defendants knew or should have known that emotional distress would be the likely result of said conduct.

203.    The negligence of the Defendants caused the Plaintiff to suffer emotional distress, embarrassment, and humiliation, the nature of which no reasonable person could be expected to endure.

204.    As a direct and proximate result of the Defendants' actions, the Plaintiff suffered damages.

WHEREFORE, the Plaintiff, James A. Walckner, prays as follows:

That the Court enter judgment in favor of the Plaintiff as to each and every cause of action in this complaint, singularly and in the collective;

That the Court enter judgment against the Defendants in an amount to be determined at trial;

That the Court enter punitive damages pursuant to statute;

That the Court order payment by the Defendants of reasonable costs and attorneys' fees;

That the Court award compensatory damages against all defendants jointly and severally;

That the Court reinstate the Plaintiff to the same position held before the retaliatory action, or to an equivalent position;

That the Court reinstate full fringe benefits and seniority rights to the Plaintiff;

That the Court award such other further relief as it may deem necessary and appropriate.

THE PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL COUNTS

RESPECTFULLY SUBMITTED,
James A. Walckner

James A. Walckner, Pro Se
43 High Meadow Drive
Plainfield, CT 06374
Phone: 508-791-5090
Fax: 978-706-5166
Email: james@walcknerlaw.com